**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONALD S. WILCZYNSKI, *et al.*, | Civil Action No. 12-4335 (MAS) (DEA) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION** |
| PETER M. REDLING, *et al.*, | |
| Defendants. | |

**SHIPP, District Judge**

Presently before the Court is Plaintiffs' motion *in limine* to exclude documents Defendants produced for the first time in response to Plaintiffs' summary judgment motion.[1] (Pls.' Mot., ECF No. 78.) Defendants filed opposition to the motion.[2] (Defs.' Opp'n, ECF No. 80.) The Court conducted oral argument on October 17, 2014. For the reasons set forth below, Plaintiffs' motion is granted.

**I.    Background**

Plaintiffs' six-count complaint alleges that Defendants: violated Section 10(b) of the Securities Exchange Act and Rule 10b-5 of the Securities and Exchange Commission (Count 1); violated Section 20(a) of the Securities Exchange Act (Count 2); failed to register with the New York attorney general for exemption from New York General Business Law Article 23-A, Sections

---

[1] In their summary judgment reply brief, Plaintiffs requested to exclude the documents Defendants filed for the first time with their summary judgment opposition. As the Court decided the summary judgment motion on other grounds, it did not need to reach the request at that time.

[2] Defendants failed to file an opposition brief pursuant to Local Civil Rule 7.1(d). Rather, Defendants filed a Certification in opposition to the motion. Nevertheless, the Court has considered the arguments set forth in Defendants' Certification.

352-259-H (Count 3); violated New Jersey securities law by failing to register as a broker dealer in violation of N.J.S.A. 49:3-56 *et seq.* (Count 4); misappropriated and converted corporate funds (Count 5); and breached their fiduciary duty (Count 6). (Second Am. Compl., ECF No. 52.)

Fact discovery in the case closed on December 30, 2013. (ECF No. 50.) On April 11, 2014, Plaintiffs moved for summary judgment. (ECF No. 58.) Defendants produced the following documents in support of their summary judgment opposition:

> [1] [P]ictures of the prototype baseball interface that existed in August of 2010 (as well as some back-end function and screen edits that were made as of September 6, 2010, which obviously means that the prototype existed in August), and which was tested from August through October, 2010[;] . . . [2] a September 2, 2010 e-mail showing that the prototype was completed and ready to be tested on a final basis[;] . . . [3] some of the actual software updates that formed Version 2. The updated Version 2 allowed a "mix" of sporting events for any given day, contrary to Version 1; the screen event page giving information on the event start time in Version 1 was expanded to also include an area that instructed the user on when challenges would appear during a sporting event (*e.g.*, between innings of a baseball game), a new section was added to allow "private challenges" for local, regional or national sports teams; the advertising portion of the application was streamlined; blackberry was added to the application portfolio; and some recurring "text display" issues were rectified[;] . . . [and] [4] minutes of a Popsy corporate meeting that occurred on September 3, 2010.

(Defs.' Summ. J. Opp'n Br., Redling Cert. ¶¶ 3, 7, 16, ECF No. 68-1; Redling Cert. Exs. A-C, E, ECF No. 68-2.)

## II. Discussion

Plaintiffs assert that the evidence Defendants produced for the first time in opposition to their summary judgment motion should be barred from being introduced as evidence at trial pursuant to Federal Rule of Civil Procedure 37. (Pls.' Moving Br. 3-4, ECF No. 78-2.) Defendants argue that "[b]ecause Exhibits A through E to the Redling Certification were never requested in [P]laintiffs' written document production demand, [D]efendants had no obligation to produce the documents prior to trial." (Defs.' Opp'n ¶ 4.) Defendants further argue that "no Rule of Civil

Procedure requires a party to produce documents other than in response to a Request for Production of Documents propounded under Rule 34." (*Id.* at ¶ 5.) Defendants' arguments are unpersuasive and unavailing.

First, the Complaint clearly put the working prototype, development of the various versions of the prototype, and the alleged failure to comply with corporate formalities at issue. For example, the Complaint alleged:

> 14. The Offering Memorandum represents that "The Company is seeking the financing to launch Popsy Interactive's 'Baseball Challenge' Smart phone application. Though its working prototype has performed successfully, there still exists all the risks inherent in the establishment of a new business." (Exhibit A, Page 4, second paragraph). *This statement is false because it refers to a "working prototype" of a smart phone application that did not exist until months later after the offering.*

(Second Am. Compl. ¶ 14) (emphasis added).[3] In addition, the Complaint alleged:

> 43. Popsy is a North Carolina Corporation, however, the Defendants have failed to comply with N.C. Gen. Stat. §§ 55-1-1 et seq. by failing to:
> a) issue a shareholder agreement to investors;
> b) issue stock certificates to investors;
> c) *hold shareholder meetings and give notice of these meetings to shareholders*;
> d) *hold board of director meetings*[;]
> e) . . . *provide access to company books and records upon request of shareholders*[;]
> f) *issue corporate minutes from shareholder meetings or director meetings.*

(Second Am. Compl. ¶ 43) (emphasis added).[4]

Second, the documents Defendants submitted with their summary judgment opposition were covered by Plaintiffs' Document Request #14. The request provided, "Attach hereto copies

---

[3] The original complaint did not contain an identical allegation. However, the first amended complaint contained an identical allegation. (Am. Compl. ¶ 14, ECF No. 16.)

[4] The original and first amended complaints contained nearly identical paragraphs. (Compl. ¶ 28, ECF No. 1; Am. Compl. ¶ 40.)

3

of each document the Defendants intend to rely upon at trial." (Defs.' Opp'n, Ex. A.) Defendants responded, "Object. Defendants are not attorneys and do not know what documents will be utilized by counsel at trial. Also object because the request impinges upon the attorney work product privilege." (Defs.' Opp'n, Ex. B.) While Defendants may not have originally known the documents that would be utilized at trial, they had an ongoing obligation to produce relevant discovery by the discovery end date.

Third, Plaintiffs raised prototype development and corporate formality issues during depositions. The following exchange took place during the October 21, 2013 deposition of Peter Redling regarding the working prototype as of August 2010:

> Q. Let's go to Page 4. The first bold paragraph, "Launch Stage Company." You're on Page 4?
> A. Yes.
> Q. Can you read that into the record?
> A. Yes. "Launch Stage Company. The company is seeking the financing to launch Popsy Interactive's Baseball Challenge smartphone application. Though its working prototype has performed successfully, there still exists all the risks inherent in the establishment of new business. Potential investors should be aware of the problems, delays, expenses and difficulties encountered by an enterprise in the company's stage of development, many of which are beyond the company's control."
> . . .
> Q. So as of the date of this PPM, was there actually a working prototype?
> A. As of the date that this PPM was circulated, there was a working prototype for – that was intended to be used for the upcoming playoffs and actually was used for the upcoming playoffs starting on I believe October 6th of 2010, baseball playoffs.
> Q. So your answer is yes, there was a working prototype?
> A. Mm-hm.
> Q. Can you answer why proof of that wasn't provided in discovery?
> A. We couldn't provide that to you.
> Q. Why not?
> A. It was – I was just – I gave my answers. I gave my answers which stated that we had a working prototype. Mr. Kurek was – as a matter of fact, he was having problems with it on his BlackBerry at the time. We can show you the whole timeline on it. Because we didn't, at that point, we didn't know how the market was gonna react to it, so we had a basic prototype ready to go and it was tested.

4

> Q. Can you provide proof today that there was a working prototype as of the date of this?
> A. I can provide it after this meeting.
> MR. BOUHOUTSOS: I'm going to ask that you produce proof of the working prototype, working prototype as of – on or before the circulation of this PPM, which is dated August 1, 2010.
> A. But the PPM wasn't circulated until the end of August. There were revisions. I have e-mails going back and forth.
> MR. CAMARINOS: It's noted.
> Q. It's dated August 1st. You made a statement in here, so obviously – you're saying there must be a working prototype when this thing was being drafted, is that correct?
> A. Mm-hm. I will bring the – I will send the information.
> MR. CAMARINOS: It's noted, Counsel.

(Pls.' Summ. J. Mot., Ex. B, Redling Dep. Tr. 47:21-48:9, 49:2-50:16, ECF No. 58-1.)

The following exchange took place regarding version two:

> Q. And as of November 21, 2011, you were CEO and CTO?
> A. Mm-hm.
> Q. What's CTO?
> A. CTO is Chief Technology Officer.
> Q. And CEO is?
> A. Chief Executive Officer.
> Q. And what was this letter; do you recall what this letter was?
> A. This letter was just an update as to what our – well, what we anticipated for the upcoming year.
> Q. Can you – second paragraph, could you read that?
> A. Yes. "To start with, I'd like to address where our technology is now and where it will be in the coming months. Currently we have released Version 2 of our smartphone application for the iPhone and Android operating systems. It is anticipated that by mid-November we will release Version 2 for the BlackBerry OS. This new release has corrected some timing bugs and navigation issues mainly in the iPhone."
> Q. Was that actually done?
> A. Yes.
> Q. Okay. Do you have proof of that?
> A. Yes.
> Q. Could you provide that in discovery?
> A. Mm-hm.
> MR. BOUHOUTSOS: I'd like to formally request that.
> MR. CAMARINOS: Not a problem.

(*Id.* at 90:25-92:5.)

The following exchange took place during the deposition of Firoz Shaikh, CPA:

A. [W]e went there because we needed to have a Board meeting, and that's about it.

. . .

A. There was a time when we needed to get together and get clear heads as to how – where Popsy was going and how we are going to do things and et cetera, and so we decided to have a meeting over there, a Board meeting, and we did. And I don't even know if it was a surprise. I thought we did inform him. But I don't recollect. It's about two – three years ago.
Q. Okay.
A. I would have to look at my e-mails at that time to see if I did inform him that we were coming.
Q. Okay.
A. Because according to this letter, we surprised him. I don't know.
Q. Okay. But did you go down to visit him to discuss what, Popsy?
A. About Popsy in general, about where we are going, about how we are doing things, because –
Q. In March of 2010.
A. March of 2010. We needed to raise more money.
Q. Why did you need to go to him?
A. We were Board, all three of us. So don't we have to have a meeting sometime?

(Pls.' SJ Mot., Ex. D, Shaikh Dep., 59:13-14, 60:20-61:17, ECF No. 58-1.)

Finally, Defendants neglected to account for their failure to comply with Rule 26 disclosure obligations. Defendants assert that "no Rule of Civil Procedure requires a party to produce documents other than in response to a Request for Production of Documents propounded under Rule 34." (Defs.' Opp'n ¶ 5.) However, Federal Rule of Civil Procedure 26(a) sets forth a party's duty to disclose. In particular, Rule 26(a)(1)(A)(ii) provides:

Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties: a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]

Rule 26(e)(1) provides that:

> [a] party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court.

In *Tarlton v. Cumberland County Correctional Facility*, the court stated:

> This District does not take compliance with Rule 26(a) lightly. . . . The purpose of voluntary disclosures is to streamline discovery and thereby avoid the practice of serving multiple, boilerplate interrogatories and document requests, which themselves bring into play a concomitant set of delays and costs. They also serve the purpose of preventing a party from improperly withholding relevant documents on the grounds that the opposing party has not specifically asked for them.

192 F.R.D. 165, 168-69 (D.N.J. 2000).

Rule 37(c)(1) states, in pertinent part, that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless." Notably, Rule 37(c)(1) is self-executing. *Tarlton*, 192 F.R.D. at 169 (citing Advisory Committee Notes, Fed.R.Civ. P. 37(c)). Rule 37(c)(1) has automatic enforcement power, and violation of a court order is not a prerequisite to the imposition of sanctions under the rule. *Id.* (citing *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d. Cir. 1995)). The Court has broad discretion regarding the type and degree of sanctions it can impose. *Wachtel v. Health Net Inc.*, 239 F.R.D. 81, 84 (D.N.J. 2006).

Here, the documents attached to Defendants' summary judgment opposition were in their control and clearly supported their defenses. The arguments Defendants provided in their *in limine* opposition Certification and during oral argument on October 17, 2014, did not demonstrate that their failure to serve the documents by the close of fact discovery was in any way justified. As such, the Court does not find that Defendants' failure was *substantially* justified.

In addition, the Court finds that Defendants' failure to serve the documents was not harmless. The docket in this 2012 matter reflects the following scheduling orders: (1) a September 28, 2012 scheduling order, which provided that fact discovery would close on March 27, 2013 (ECF No. 21); (2) a January 30, 2013 scheduling order, which provided that production of relevant documents must be served by February 15, 2013 (ECF No. 24); (3) a March 4, 2013 scheduling order, which provided that fact discovery must be completed by May 31, 2013 (ECF No. 25); (4) a June 18, 2013 scheduling order, which stated that Defendants must serve more specific and responsive answers to interrogatories and must produce documents by June 28, 2013, and provided that fact discovery must be completed by September 30, 2013 (ECF No. 33); (5) an October 2, 2013 scheduling order, which provided that fact discovery must be completed by October 30, 2013 (ECF No. 40); (6) a December 16, 2013 scheduling order, which provided that fact discovery must be completed by December 30, 2013 (ECF No. 50); and (7) a January 15, 2014 scheduling order, which provided that fact discovery was complete (ECF No. 54).

As such, the docket reflects numerous fact discovery extensions, and Defendants had ample opportunity to produce discovery relevant to Plaintiffs' case and their defenses. Here, Plaintiffs suffered surprise when Defendants submitted documents that supported their defenses well after the close of fact discovery. In addition, Plaintiffs were prejudiced because Defendants' late production deprived them of the opportunity to re-depose witnesses and incorporate the discovery into any expert reports. Moreover, the docket in this case indicates that Plaintiffs made concerted efforts to obtain discovery. However, Defendants exhibited a history of dilatoriness.[5]

---

[5] In correspondence dated September 10, 2013, Judge Arpert noted that: (1) Defendants failed to timely provide responses to Plaintiffs' discovery requests; (2) the Court previously expressed its concerns about "the apparent lack of attention to this matter"; (3) "the conduct which has been exhibited in this case to date can not continue"; and (4) any further failure to comply with a Court order or directive would likely result in sanctions. (Sept. 10, 2013 Ltr., ECF No. 35.) In a March

8

Based on the numerous scheduling orders previously issued in the matter, the Court does not find good cause to reopen discovery at this late stage of the litigation, which would further frustrate Plaintiffs' ability to timely try the matter. Here, the Court finds that Defendants' actions in this case were not harmless. Since Defendants failed to provide the discovery prior to the fact discovery end date, and the failure was not substantially justified or harmless, the Court finds good cause to bar Defendants from using the discovery at trial pursuant to Rule 37(c)(1).

### III. Conclusion

For the reasons set forth above, and other good cause shown, Plaintiffs' motion *in limine* is granted. At trial, Defendants may not rely on documents they submitted for the first time in opposition to Plaintiffs' summary judgment motion. An appropriate form of order will issue.

      s/ Michael A. Shipp
      **MICHAEL A. SHIPP**
      **UNITED STATES DISTRICT JUDGE**

---

21, 2014 Order, the Court denied Plaintiffs' motion for sanctions, finding that the matter had moved forward since Plaintiffs filed the sanctions motion. (March 21, 2014 Order, ECF No. 57.) However, the Court was not confronted with the post-discovery document production at that time.